1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  CONRADO MADRID, | )  Case No.: 1:19-cv-0669 JLT |
| 12            Plaintiff, | )  ORDER DENYING PLAINTIFF'S MOTION TO STAY (Doc. 35) |
| 13       v. | )  ORDER GRANTING DEFENDANT'S MOTION TO STAY THE ARBITRATION PROCEEDINGS (Doc. 47) |
| 14  LAZER SPOT, INC., | ) |
| 15            Defendant. | )  ORDER GRANTING DEFENDANT'S EX PARTE APPLICATION TO STRIKE PLAINTIFF'S UNTIMELY REPLY BRIEF (Doc. 68) |
| 16 | ) |
| 17 | ) |

18            Conrado Madrid is a former employee of Lazer Spot, Inc. (*See generally* Doc. 1) He claims to

19    have suffered discrimination on the basis of race, a hostile work environment, and retaliation for

20    protected activities as an employee. *Id.*  In addition, Plaintiff seeks to hold Lazer Spot liable for wage

21    and hour violations, breach of contract, and wrongful termination. *Id.*

22            Plaintiff now seeks to stay the action in favor of arbitration pursuant to 9 U.S.C. § 3.  He also

23    seeks monetary sanctions, arguing Defendant concealed the arbitration agreement.  (Doc. 35)

24    Defendant opposes the motion and argues Plaintiff waived the right to arbitrate and the parties had a

25    subsequent agreement to not arbitrate the claims. (Docs. 47, 59) The defendant also seeks a stay of the

26    arbitration proceedings initiated by Plaintiff.  Id.

27            For the reasons set forth below, Plaintiff's motion to stay this action for arbitration is **DENIED**,

28    and Defendant's motion to stay the arbitration proceedings is **GRANTED**.

## I.      Background and Procedural History

Plaintiff was employed by Lazer Spot from April 2, 2018 to May 24, 2018.  (Doc. 47 at 9)  He reports that he was one of three African American employees who worked the night shift for Lazer Spot's truck-yard facility in Shafter, California ("Lazer Yard").  (Doc. 1 at 4-5, ¶¶ 9-10, 14, 20)  According to Plaintiff, there were "approximately 30 other nightshift employees," meaning the African American employees compromised "approximately 10% representation."  (*Id.* at 4, ¶ 10)  He contends the three employees "grossly underrepresented the portion of eligible African-American Class 'A' drivers within the Bakersfield, California labor pool."  (*Id.*)

Plaintiff alleges "Lazer Spot's three African-American employees were sent to lunch together; were assigned the oldest trucks; were harangued for exiting their truck cabs and getting lunch; were referred to as 'bros'; and were regularly yelled at in public."  (Doc. 1 at 4, ¶ 12)  He contends, "Only the African-American employees were subjected to such treatment."  (*Id.*)  Plaintiff asserts Chuck, the night-shift supervisor, would "broadcast[]employee-specific criticisms and complaints over Lazer's yard-operations radio channel," but only African Americans were subjected to this treatment.  (*Id.* at 5, ¶ 15)

In May 2018, Plaintiff and his African American coworkers approached Chuck and "requested that he refrain from broadcasting his complaints against [them]… over the yard-operations radio channel."  (Doc. 1 at 5, ¶ 14)  They requested Chuck "address complaints or issues directly with the implicated employee."  (*Id.*, ¶ 16)  Plaintiff asserts that "[h]ours later," he was "terminated in a profanity-laced tirade— delivered in front of a large crowd of other employees—wherein Plaintiff was told, with reference to his attempts to stand up for himself, 'we don't do sh*t like that around here; you're not going to act how you f**king want around here; we are going to fire your a**.'"  (*Id.*, ¶ 17)

Plaintiff contends he also suffered from state wage and hour law violations as an employee of Lazer Spot, because he "was never compensated for hours worked at the Lazer Yard."  (Doc. 1 at 5, ¶18)  Plaintiff reports he "knows with certainty that he never worked less than 60 hours in any given week; yet, Plaintiff was paid for less than 60 hours on a number of weeks."  (*Id.*) Specifically, he reports he "was paid for less than 60 hours for the pay period between April 8, 2018- April 14, 2018; for the pay period between April 22, 2018-April 28, 2018; for the pay period between April 29, 2018-May 9,

2018; and for the pay period between May 13, 2018- May 19, 2018." (*Id.* at 13, ¶ 74)  Thus, Plaintiff

contends his paystubs were inaccurate.  (*Id.* at 13-14, ¶¶ 75-76) Plaintiff contends he was not provided

rest and meal breaks and when given time to eat, "Plaintiff was required to remain in his truck cab

during such time." (*Id.* at 15, ¶¶ 83-84)

Following his termination, Plaintiff obtained representation from Abramson Labor Group and

Lesches Law.  (*See* Doc. 1) On June 19, 2018[1], W. Zeb Abrahmson, an attorney with Abramson Labor

Group, wrote to Defendant to report the law firm represented Plaintiff "in connection with certain

potential workplace related claims against Lazer Spot."  (Doc. 37-1 at 2; Doc. 63 at 100, 102) Mr.

Abramson inquired whether Defendant would hold Plaintiff to an arbitration agreement:

> [P]lease set forth the basis for any contention that our client's disputes must be referred to arbitration. Specifically, please identify any written contracts or agreements that you contend constitute an agreement to arbitrate. If you contend that our client is bound by any arbitration agreement, please inform our office within 21 days of this letter. If you fail to do so, we will presume that you are waiving your right to arbitrate any employment dispute with our client.
>
> …
>
> Pursuant to our client's signed Authorization (attached), please produce Plaintiff's entire employment file and payroll file no later than 30 calendar days from receipt of this letter. The required documents include, but are not limited to, our client's employment records, personnel records, payroll documents, time records and any other documents regarding our client that are in your possession, custody, or control. Please note that Labor Code provide for penalties for refusing to honor an employee's request for their payroll and/or personnel file. We look forward to these full contents no later than the statutory deadlines as set forth above.

(*Id.* at 2, 4) Twenty-one days passed without Defendant claiming that Plaintiff would be bound to an

arbitration agreement.  (*See* Doc. 47 at 10)

In July 2018, Plaintiff "requested his personnel file" from Defendant. (Doc. 1 at 12, ¶ 67)  He

alleges that in response, "Lazer Spot produced the signature page to an employment agreement, signed

by Plaintiff on April 2, 2018."  (*Id.*, ¶ 68)  Plaintiff alleged, "The signature page bearing as its first line

'Employee Benefit Plan Claims Procedures,' and attached hereto [to the Complaint] as Exhibit 'B',

---

[1] The exhibit provided by Plaintiff is dated June 19, <u>2019</u> (Doc. 37-1 at 2).  However, Defendant produced a letter dated June 19, <u>2018</u> (Doc. 63 at 100). The text of the letter is identical in all other respects.  (*Compare* Doc. 37-1 at 2-4 *with* Doc. 63 at 100-102)  Although it is unclear where the 2019 date originated, the record before the Court establishes the letter was, in fact, mailed in 2018.

Nissim Levin, a partner with Abramson Labor Group, reported the firm's "case-management software … shows that the Personnel/Preservation Letter addressed to Lazer Spot, Inc. was sent on June 19, 2018." (Doc. 37 at 3, Nevin Decl. ¶ 12)  Similarly, Lazer Spot reports that the letter was received in June 2018, and the firm responded the following month. (Doc. 47 at 10)

indicates that the page is but the last page in a long-form agreement."[2]  (*Id.* at 13, ¶ 69)  He asserts that "Lazer Spot's failure to produce such long-form agreement in its entirety renders Lazer Spot liable for the statutory penalty provided in section 1198.5…."  (*Id.*, ¶ 70)

On May 15, 2019[3], Plaintiff initiated this action by filing a complaint against Lazer Spot, seeking to hold his former employer liable for the following: (1) unlawful discrimination, (2) hostile work environment, (3) unlawful retaliation in violation Cal Gov't Code § 12940(h), (4) retaliation in violation of Cal. Labor Code § 1102.5; (5) wrongful termination, (6) failure to furnish personnel records, (7) failure to pay minimum wages, (8) breach of contract, (9) waiting time penalties, (10) failure to furnish meal periods and rest breaks, and (11) violations of California unfair competition law. (*See generally* Doc. 1)  Lazer Spot filed its answer to the complaint on July 9, 2019.  (Doc. 9)

The Court held a scheduling conference with the parties on August 13, 2019.  (Doc. 14)  The parties were ordered to complete non-expert discovery no later than February 21, 2020; and all expert discovery no later than May 1, 2020.  (*Id.* at 1, 3)  The parties began discovery, including written requests served by Plaintiff and Defendant.  (*See* Doc. 18 at 2; Doc. 35 at 21)  Plaintiff also noticed depositions for Plaintiff's former manager and two former co-workers.  (Doc. 18 at 2)

On February 19, 2020, Defendant took the deposition of Brent Harrison, a former employee of Defendant who was identified by Plaintiff as a witness in his initial disclosures.  (Doc. 35 at 20) During the deposition, Defendant "introduced Lazer Spot's Employee Handbook, containing the Dispute Resolution Policy, as an exhibit."  (Doc. 47 at 12)  Plaintiff's counsel, Levi Lesches, reports this is the first time he saw the arbitration agreement. (Lesche Decl. ¶¶ 18-19)  The following day, Mr. Lesches informed Defendant that Plaintiff would be pursing arbitration.  (Doc. 35 at 20, citing Decl. ¶30 & Exh. C)

On February 26, 2020, Plaintiff appeared for a deposition.  (Doc. 47 at 12; *see also* Doc. 63 at 11)  Plaintiff testified that he recalled "getting and reading" Defendant's dispute resolution policy,

---

[2] Notably, there is no "Exhibit B" to the Complaint. (*See generally* Doc. 1)  However, the described page is included in Plaintiff's motion, and is the same as the document later identified as "Exhibit 16" at Plaintiff's deposition. (*See* Doc. 35 at 18; Doc. 63 at 27)

[3] The day before, Plaintiff initiated a related action against Ross Stores, Inc., in Kern County Superior Court, Case No. BCV-19-101326-DRL. (Doc. 6)  Plaintiff asserts both Ross and Lazer Spot are proper defendants because "Lazer Spot was a consultant and/or contractor for… Ross."  (Doc. 12 at 6)

which he signed.  (Doc. 63 at 17-18, Madrid Depo. 246:13-21)  Plaintiff reported the handbook "took forever to read" and he "skimmed" through the pages including the dispute resolution policy.  (*Id.* at 20-21, Depo. 249:16- 250:3)  Plaintiff confirmed he remembered reading Exhibit 16— which addressed an arbitration plan— before signing the document.  (*Id.* at 20, Depo. 249: 7-9; *see also id.* at 27 [Exh. 16])

After Plaintiff requested arbitration, Defendant responded the company "dispute[d] the enforceability of the arbitration agreement," because Plaintiff "filed the lawsuit instead of filing a demand for arbitration and acted inconsistently with his alleged intent to arbitrate for approximately one year."  (Doc. 35 at 20, quoting Lesches Decl. Exh. D)  On March 3, 2020, Plaintiff "commenced arbitration agreements, based on [counsel's] understanding that the arbitration agreement was self-executing."  (Doc. 36 at 6, Lesches Decl. ¶ 33)

On April 5, 2020, Plaintiff filed his motion to stay pending arbitration under the Federal Arbitration Act.  (Docs. 35-37)  Defendant filed a motion to stay the arbitration proceedings on May 5, 2020 (Doc. 47), and filed its opposition to Plaintiff's motion on May 19, 2020 (Doc. 59).  Plaintiff filed his opposition to Defendant's motion on May 19, 2020. (Docs. 61-52)  He filed a reply to Defendant's opposition to stay on May 27, 2020.  (Doc. 66)  Thereafter, Defendant filed a request that Plaintiff's reply be stricken as untimely (Doc. 68), to which Plaintiff filed a response on June 1, 2020 (Doc. 70).

**I.      Untimely Brief**

As in initial matter, Plaintiff filed his reply brief related to the motion to stay this action on May 27, 2020.  (Doc. 66)  Pursuant to Local Rule 230(d), the reply, if any, was to be filed "[n]ot less than seven (7) days preceding the date of hearing."  Because the matter was set for hearing on June 2, 2020, any reply was to be filed no later than May 26, 2020.  *See* Local Rule 230(d).

Plaintiff acknowledged the document was untimely, reporting he "was unable to timely file his Reply on May 26, 2020, due to time demands relating to other case files."  (Doc. 66 at 2)  Plaintiff acknowledged he "refused Defendant's proposal for a briefing extension."  (*Id.*)  Because the reply was untimely and there is no good cause for such delay, the request to strike reply as untimely is

1   **GRANTED**.[4]  *See Warkentin v. Federated Life Ins. Co.*, 2012 WL 2116389 at *1, n. 1 (E.D. Cal. June

2   8, 2012) (disregarding an untimely reply brief for failure to comply with the deadline set forth in the

3   Court's Local Rules); *see also Tenore v. Horowitz*, 2019 WL 2913986 at *3, 15 (E.D. Cal. July 8,

4   2019) (disregarding a party's statement as untimely under Local Rule 230, but accepting another late

5   document where good cause was shown for the delay).

6   **II.     The Federal Arbitration Act**

7           The Federal Arbitration Act "governs the allocation of authority between courts and

8   arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  The FAA provides

9   that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such

10  grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision

11  "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement

12  within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

13  24 (1983).

14          Generally, the court's role in applying the FAA is "limited to determining (1) whether a valid

15  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

16  issue." *Chiron Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1130 (9th Cir. 2000), citing 9 U.S.C.

17  § 4. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the

18  arbitration agreement in accordance with its terms." *Id.*  Thus, a court shall stay or dismiss an action for

19  arbitration proceedings to occur.  *See* 9 U.S.C. §§ 3, 4; *see also Delgadillo v. James McKaone Enters.*

20  *Inc.*, 2012 WL 4027019 at *3 (E.D. Cal. Sept. 12, 2012) (if the court "determines that an arbitration

21  clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the

22  case if all of the alleged claims are subject to arbitration").

23          A party opposing arbitration has the burden to demonstrate the claims at issue should not be

24  sent to arbitration.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also*

25  *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("the parties

26  challenging the enforceability of an arbitration agreement bear the burden"). An arbitration agreement

27

28          [4] Although Plaintiff's reply and the arguments therein will not be cited, the Court reviewed the reply and finds
    that it would not change the analysis below related to the motion to stay.

may "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  In addition, a party may show a claim should not be sent to arbitration if the right to arbitration has been waived. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

## II.      Existence of a Valid Arbitration Agreement

In evaluating a motion under the FAA, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  In making this determination, the Court "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).  Under California law, a valid contract requires: (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550.  An arbitration agreement cannot be invalidated for unconscionability absent a showing of both procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

There is no dispute Plaintiff executed a valid arbitration contract.  (*See generally* Doc. 35, 47)  Indeed, it appears Plaintiff and Lazer Spot were capable of entering into a contract and mutually assented to the arbitration agreement.  Furthermore, establishing a dispute resolution plan was a lawful object, and there is no argument that there was insufficient cause or consideration for either party.  Thus, the Court finds the arbitration agreement executed by Plaintiff was a valid contract under California law.

Pursuant to the terms of the agreement, Lazer Spot and Plaintiff agreed "to resolve legal claims without going to court." (Doc. 36-1 at 2)  The Dispute Resolution Plan ("DRP") applies to "legal disputes and controversies between a Covered individual and Lazer Spot that relate to or arise from the employment relationship, a request for employment or this DRP, whether under federal or state law, including statutes, rules, regulations, ordinances, and common law." (*Id.* at 3)  The covered claims include claims related to involuntary termination, employment discrimination and harassment claims

1 based on race, retaliation, and claims related to wages. (*Id.* at 3-4) Thus, many of the claims brought

2 by Plaintiff in this action are claims covered by this agreement. Further, the terms indicate the "DRP

3 is subject to the Federal Arbitration Act, 9 U.S.C. § 1." (*Id.* at 2)

**III.     Waiver**

5 Defendant argues the Court should not stay the matter for arbitration under the FAA because

6 "Plaintiff waived his right to arbitrate due to litigation conduct." (Doc. 47 at 25, emphasis omitted).

7 On the other hand, Plaintiff argues the matter should be stayed because he has not waived his right to

8 seek arbitration in this action. (Doc. 35 at 17-21)

**A.     Resolution of the issue by the Court**

10 As an initial matter, Plaintiff asserted in his motion that Lazer Spot "must raise its 'waiver'

11 contention before the *arbitrator*" rather than the Court. (Doc. 35 at 15, emphasis in original)

12 Defendant countered that the issue of waiver is within the province of the Court, because "the DRP

13 does not contain clear and unmistakable language delegating the issue of waiver by litigation to an

14 arbitrator to decide." (Doc. 47 at 23)

15 The Ninth Circuit explained, "unless the parties clearly and unmistakably provide otherwise,"

16 courts must determine whether an issue is arbitrable. *Oracle America, Inc. v. Myriad Group A.G.*, 724

17 F.3d 1069, 1073 (9th Cir. 2013). Furthermore, "the Ninth Circuit has indicated that defenses to the

18 enforceability of an arbitration agreement, such as waiver, are for the Court to decide." *Morgan Stanley*

19 *& Co. LLC v. Couch*, 134 F.Supp.3d 1215, 1223-24 (E.D. Cal. 2015) (citing *Cox v. Ocean View*, 533

20 F.3d 1114, 1120 (9th Cir. 2008)). Other courts have determined similarly that the court—rather than an

21 arbitrator—must "decide whether an arbitration agreement is valid," which "includes determining

22 whether an arbitration agreement is unenforceable by one party because that party has waived its rights

23 under the agreement." *Id.*, 134 F.Supp.3d at 1223-24; *see also JPD, Inc. v. Chronimed Holdings, Inc.*,

24 539 F.3d 388, 393 (6th Cir. 2008) ("we join the First and Third Circuits in holding that the court, not

25 the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to

26 arbitration because it has acted inconsistently with reliance on an arbitration agreement").

27 As Plaintiff observes, the arbitration agreement indicates issues related to the "validity, scope,

28 and enforceability, arbitrability or interpretation of [the] DRP" are covered claims. (Doc. 36-1 at 4)

However, the DRP also informs the signing employees that certain claims are excluded from arbitration, and "[e]ither you or Lazer Spot may, if necessary, seek judicial relief in order to enforce this DRP and/or seek dismissal for the failure to honor this DRP." (*Id.* at 5) Thus, on its face, the agreement delegated authority to the Court to resolve issues related to enforcement, which includes the issue of waiver. Ind fact, in the reply brief "Plaintiff concede[d] that the agreement delegating disputes regarding 'enforceability' to the arbitrator did *not* divest this Court's authority to consider whether arbitration was waived through litigation conduct." (Doc. 66 at 5, emphasis in original) Consequently, the Court finds that under the terms of the agreement, it maintains authority to determine whether a party has waived the right to arbitration. *See Morgan Stanley*, 134 F.Supp.3d at 1223-25; *Oracle America*, 724 F.3d at 1073.

### B.      Analysis

The "right to arbitration, like any other contract right, can be waived." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). The Ninth Circuit applies a three-factor test to analyze whether contractual arbitration rights have been waived, stating: "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Thus, Lazer Spot has the burden to establish each of the three elements. *See id.*; *Sovak, M.D. v. Chugai Pharmaceutical,* 280 F.3d 1266 (9th Cir. 2002).

#### 1.      Knowledge of the right to arbitration

Defendant argues, "Plaintiff indisputably had knowledge of his right to arbitrate the day he signed the DRP's signature page on April 2, 2018." (Doc. 47 at 25) (citing *Safadi v. Citibank, N.A.*, 2012 WL 4717875 at *4 (N.D. Cal. Oct. 2, 2012) (finding a party assented to terms of arbitration provision "[b]y signing the [Agreement's] signature card")). Further, Defendant contends:

> Plaintiff's knowledge of his right to arbitrate is further evidenced by the fact that: (1) on April 2, 2018, Plaintiff also acknowledged in writing that he received a copy of Lazer Spot's Employee Handbook, containing the DRP that includes the arbitration provision (Burns Decl., ¶ 4, Ex. 1, Plaintiff Dep., 220:2-222:16); (2) Plaintiff testified during his deposition that he remembered reading the signature page of the DRP (*id.*, ¶ 4, Ex. 1, Plaintiff Dep., 244:19-24; 246:8-247:11; 247:18-248:3; 249:3-9); and (3) Plaintiff further testified that he recalled skimming through the DRP (*id.*, ¶ 4, Ex. 1, Plaintiff Dep., 249:12-250:3).

9

1    (Doc. 47 at 26)

2         Plaintiff maintains that he "had no knowledge of the arbitration agreement," so he could not

3    have waived the right to arbitration. (Doc. 35 at 31, emphasis omitted)  Plaintiff acknowledges that

4    during his deposition, he testified that "(1) he recognized the agreement; (2) he recalled skimming the

5    agreement; and (3) he signed the agreement."  (*Id.*)  However, Plaintiff argues "such facts only

6    establish that the agreement is *enforceable*," and "[t]here is no legal presumption that… [he]

7    *recollected* the document's contents."  (*Id.*, emphasis in original)  According to Plaintiff, "The fact that

8    Plaintiff once knew about the arbitration agreement did not obligate Plaintiff to recall such agreement,

9    with its myriad details, in perpetuity."  (*Id.* at 33, citing *Dickey v. Vital One Health Plans Direct, LLC*,

10   2019 WL 2545500 (E.D. Cal. June 20, 2019))

11        In support of the suggestion that the proper question is whether Plaintiff recalled the arbitration

12   agreement—rather than whether he had knowledge of the document— Plaintiff contends this court

13   "reject[ed] a 'constructive knowledge theory, and [found] that the opportunity to obtain [an] agreement

14   did not constitute knowledge under *Fisher*."  (Doc. 35 at 33, citing *Dickey*, 2019 WL 2545500)

15   However *Dickey* did not address constructive knowledge, and the facts considered in *Dickey* are not

16   similar to those now before the Court.  In *Dickey*, the Court considered whether to permit the defendant

17   to file an amended answer to add an arbitration defense where the defendant learned of an arbitration

18   agreement that may bind the plaintiff during the course of discovery and after review of a website of a

19   non-party entity.  *See id.*, 2019 WL 2545500 at *3.  The "plaintiff [did] not dispute that defendant was

20   unaware of a potential right to arbitration" prior to the company's review of the website. *Id.*  However,

21   Dickey argued the "defendant should have been aware of a potential arbitration defense earlier" by

22   engaging in discovery "earlier than it did."  *Id.* The Court found that even if the defendant could have

23   learned of the arbitration agreement earlier, the plaintiff "failed to meet her heavy burden of showing

24   that defendant had prior knowledge of a potential right to arbitration."  *Id.* Thus, the Court did not

25   reject a constructive knowledge theory or create a new standard that required a party to recollect the

26   terms of an arbitration agreement before knowledge could be found under *Fisher*.

27        Significantly, an individual "who signs a written agreement generally is bound by its terms,

28   even though he neither reads it nor considers the legal consequences of signing it."  *Operating*

10

*Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984); *see also In re Schwalb*, 347 B.R. 726, 743 (D.Nev. 2006) ("It has long been the common law rule that signing a document authenticates and adopts the words it contains, even if there was a lack of subjective understanding of the words or their legal effect. In essence, people are presumed to be bound by what they sign.") Plaintiff does not dispute that he reviewed the terms of the dispute resolution plan—though he chose to "skim" the document— prior to signing the agreement. (Doc. 35 at 31; *see also* Doc. 63 at 17-18, Madrid Depo. 246:13-21; *id.* at 20, Depo. 249: 7-9)

Based upon Plaintiff's testimony and his execution of the written dispute resolution plan, the Court finds Plaintiff had knowledge of the right to compel arbitration upon his execution of the document on April 2, 2018. *See Morgan Stanley*, 134 F. Supp. 3d. at 1228 (finding the first prong of *Fisher* was satisfied because the employment agreement—including an arbitration clause provisions— was executed and the individual "therefore knew of his arbitration rights"); *see also Hoffman Constr. Co. v. Active Erectors & Installers, Inc.,* 969 F.2d 796, 798 (9th Cir. 1992) (finding a party had knowledge of the right to arbitrate because "[t]he contract itself called for arbitration of disputes"); *Steiner v. Horizon Moving Systems, Inc.*, 2008 U.S. Dist. LEXIS 110393 *8 (C.D. Cal. Oct. 30, 2008) (finding the party had "constructive, if not actual, knowledge of the existing right to compel arbitration upon signing the agreement allegedly containing the arbitration provision").

### 2.      Acts inconsistent with the right to arbitration

The Court's review of the record reveals that Plaintiff has repeatedly acted in a manner inconsistent with the right to arbitrate, including pursuing litigation in the state and federal courts.  In June 2018, counsel for Plaintiff inquired whether Lazer Spot would attempt to hold Plaintiff to an arbitration agreement, and requested Defendant identify "the basis for any contention that [Plaintiff's] disputes must be referred to arbitration."  (Doc. 37-1 at 2)  In addition, counsel informed Lazer Spot that if the company did not respond with the requested information, Plaintiff would "presume that [Lazer Spot] was waiving [the] right to arbitrate."  (*Id.*)  Thus, Plaintiff clearly expressed an intent to *litigate* the claims, even prior to filing the complaint.  Nearly a year after this inquiry letter, Plaintiff filed this action against Lazer Spot and commenced a related action in the state court against Ross Stores in Kern County Superior Court (Doc. 6), asserting both Lazer Spot and Ross were proper

1   defendants because "Lazer Spot was a consultant and/or contractor for... Ross."  (Doc. 12 at 6)

2         Plaintiff asserts Defendant is unable to show he acted inconsistently with the right to

3   arbitration because: "Plaintiff has not filed any motions. Plaintiff has not sought any discovery

4   conferences. Plaintiff filed a single discovery motion, which was informally resolved prior to hearing.

5   Plaintiff has only participated in the filing of status reports and similar administrative matters."  (Doc.

6   35 at 33)  According to Plaintiff, these actions "do not constitute a waiver of arbitration. Isaac v.

7   Morgan Stanley DW, Inc., 2005 WL 2655828, at *5 (E.D. Cal. Oct. 17, 2005) ("Although defendant

8   has answered the complaint, and participated in the filing of two status reports, it has not been forced

9   by plaintiff to respond to discovery or briefing on the merits of the case").

10         Plaintiff's assertions related to his lack of motions and participation in conferences are not well

11   taken, as Plaintiff requested an informal telephonic conference that was denied by the Court on

12   February 10, 2020. (Doc. 27)  The following day, Plaintiff filed a motion to strike Defendant's answer

13   "and/or imposing monetary sanctions... due to Lazer's unreasonable refusal to designate a deponent

14   under Rule 30(b)(6) of the Federal Rules of Civil Procedure, and/or due to Lazer's ... refusal to furnish

15   a Rule 30(b)(6) witness."  (Doc. 28 at 2) Presumably, this is the discovery motion Plaintiff now

16   indicates "was informally resolved prior to hearing."  (Doc. 35 at 33) However, the Court, not Plaintiff,

17   dropped the motion due to his failure to comply with Local Rule 251.  (Doc. 31) Furthermore, the same

18   day that Plaintiff filed the motion now being considered—indeed, only a few hours later—Plaintiff

19   filed a "renewed" notice of the motion and request to strike Lazer Spot's answer related to the

20   designation of a Rule 30(b)(6) witness.  (Doc. 40)  Thus, clearly, the discovery matter was not

21   "resolved prior to hearing," and Plaintiff sought the assistance of the Court related to discovery

22   disputes.

23         Also, Lazer Spot observes Plaintiff "prosecut[ed] this case for almost a year before demanding

24   arbitration."  (Doc. 47 at 27)  Lazer Spot asserts that Plaintiff has:

25         •   Negotiated a Joint Scheduling Report and participated in a Scheduling Conference
            (Doc. 12);

26

27         •   Served Initial, Supplemental, and Amended Disclosures (Burns Decl., ¶ 27, Ex. 24);

28         •   Propounded and responded to Interrogatories and Requests for Production (*Id.*, ¶¶
            28-29, Exs. 25-26);

- Conferred with Lazer Spot regarding the case schedule, depositions, written discovery, amendments to the Complaint, and a protective order (*Id.*, ¶ 23, Ex. 20, ¶30, Ex. 27);

- Prepared a draft Motion to Compel (*Id.*, ¶ 23, Ex. 20);

- Requested and participated in informal discovery conferences with, and submitted letter briefs to, the Magistrate Judge (*Id.*, ¶ 31, Ex. 28);

- Objected to third party Subpoenas (*Id.*, ¶ 32, Ex. 29);

- Negotiated a Stipulated Protective Order regarding confidentiality (*Id.*, ¶ 33);

- Deposed four Lazer Spot employees and a "Person Most Knowledgeable" witness; defended Plaintiff at his deposition; questioned third party witnesses at depositions (*Id.*, ¶ 34);

- Negotiated and filed multiple Stipulations to amend the case schedule (Docs. 10, 16, 29); and

- Filed a dispositive Motion seeking to Strike Lazer Spot's Answer (Doc. 28).

(Doc. 47 at 27)  Given this, Lazer Spot asserts Plaintiff has engaged in "extensive litigation conduct and [his] delay in initiating arbitration easily satisfy the second element of waiver."  (*Id.* at 28)

Notably, "[c]ourts routinely have found that a party's actively litigating a lawsuit for a substantial period of time before demanding arbitration is indisputably inconsistent with the right to arbitrate." *Morgan Stanley*, 134 F.Supp.3d at 1223-24; *see also See Kelly v. Pub. Util. Dist. No. 2, 552* Fed. App'x 663, 663-64 (9th Cir. 2014) (party waived arbitration rights by "wait[ing] eleven months after the lawsuit was filed to demand arbitration, actively litigating the case in district court"); *Ford v. Yasuda,* 2015 WL 3650216, at *6 (C.D. Cal. Apr. 29, 2015) (collecting cases finding months-long delay in demanding arbitration is inconsistent with right to arbitrate).

Plaintiff's activities through the ten months between the filing of the complaint and seeking arbitration included: engaging in discovery[5], sending informal communications to the Court, participating in conferences with the Court, and filing motions for terminating sanctions.  Plaintiff did not seek to compel arbitration until after the parties were to have completed all non-expert discovery.[6]

---

[5] Plaintiff acknowledges the that during the non-expert discovery period, he deposed Defendant's employees, served twenty requests for production, twenty interrogatories, and engaged in communications regarding a protective order. (Doc. 61 at 29)

Thus, Plaintiff's delay in seeking arbitration while litigating the case before the district court—and prosecuting a related claim in the state court—support a finding that he has acted in a manner inconsistent with the right to arbitration.  *See id.*; *see also Antuna v. Am. W. Homes, Inc.,* 232 Fed. App'x 679 (9th Cir. 2007) (finding the parties "waived their right to arbitrate by actively litigating their claim in state and federal court").  Consequently, the Court finds Defendant met the burden to satisfy the second prong of *Fisher*.

### 3.   Prejudice to Defendant

Defendant asserts Lazer Spot has suffered prejudice through "Plaintiff's inconsistent litigation acts and delay in initiating arbitration."  (Doc. 47 at 28)  In particular, Lazer Spot argues:

> [Plaintiff] prejudiced Lazer Spot by: (i) causing Lazer Spot to incur significant litigation expenses that it would not have incurred in arbitration; (ii) forcing Lazer Spot to engage in Plaintiff's bizarre and simultaneous litigation and arbitration activities; (iii) requiring Lazer Spot to expend significant time and resources preparing this Motion to Stay Arbitration and opposing Plaintiff's Motion to Stay this action; (iv) requiring Lazer Spot to re-evaluate and modify its case strategy late into the litigation proceedings amidst critical deadlines; and (v) potentially depriving Lazer Spot of the right to a jury trial, appeal, and a precedential decision—none of which it would be entitled to in arbitration.

(*Id.*)  Defendant argues the expenses it has incurred during the course of litigation show the company has been prejudiced because "[s]pending a lengthy amount of time litigating in the more complex federal court system with its rigorous procedural and substantive rules will almost inevitably cause the parties to expend more time, money, and effort than had they proceeded directly to arbitration." (Doc. 47 at 28-29, quoting *Martin v. Yasuda*, 829 F.3d 1118, 1127 (9th Cir. 2016); *see also id.* citing *Plows v. Rockwell Collins, Inc*., 812 F. Supp. 2d 1063, 1068 (C.D. Cal. 2011) [prejudice found, in part, where party "waited more than a year to request arbitration," opposing party "racked up thirteen months of legal fees defending a case in the court system"]).  Defendant also argues, "had the parties arbitrated this matter initially, Lazer Spot would not have spent a significant amount of time conferring with Plaintiff and negotiating and preparing" documents such as the joint scheduling report and multiple stipulations."  (*Id.* at 29)  According to Defendant,

Lazer Spot has also incurred approximately $23,500 in legal fees for arbitration-related

---

[6] The parties were "ordered to complete all discovery pertaining to non-experts on or before **February 21, 2020**." (Doc. 14 at 3, emphasis in original)  Plaintiff filed his motion to stay on April 5, 2020 (Doc. 35), clearly well after the non-expert discovery period had closed.

activities, excluding preparation of this Motion, for tasks including analyzing opposition to Plaintiff's arbitration demand and motion for attorneys' fees, conferring with Plaintiff's counsel, preparing correspondence to the AAA and Magistrate Judge, responding to Plaintiff's counsel's correspondence to the AAA and Magistrate Judge, and researching and analyzing numerous arbitration-related issues.

(*Id.*)

Plaintiff argues Lazer Spot's contention that it has suffered prejudice is "frivolous" and "outrageous." (Doc. 61 at 10) He asserts Defendant cannot establish prejudice because "Defendant has not obtained any rulings, favorable or otherwise." (Doc. 35 at 34) In addition, Plaintiff argues there is no prejudice because "[t]he Court has not ruled on any motion to dismiss, summary adjudication, or other matter." (*Id.*) According to Plaintiff, "A ten-month delay, alone, does not constitute prejudice." (*Id.*, citing *Rodriguez v. Shen Zhen New World I LLC*, 2014 WL 908464, at *4 (C.D. Cal. Mar. 6, 2014)).

Courts have determined that delay in pursuing arbitration while litigating in court may support a finding of prejudice. Indeed, this Court observed a "delay alone can constitute prejudice" when the party delayed approximately one year. *See Morgan Stanley*, 134 F.Supp.3d at 1231 (citing, *e.g.*, *Steiner v. Horizon Moving Sys., Inc.*, 2008 WL 4822774 at *3 (C.D. Cal. Oct. 30, 2008) ("Plaintiff's delay constitutes prejudice."). The Northern District observed that "[w]here courts have found prejudice from delay, the parties had engaged in extensive discovery." *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 847 (N.D. Cal. 2012).

The deadline for completing non-expert discovery expired prior to the filing of the motion to stay, and the parties had completed non-expert discovery.[7] Thus, Plaintiff's delay alone supports a finding that having the matter arbitrated at this late juncture would prejudice Lazer Spot. *See Morgan Stanley*, 134 F.Supp.3d at 1231; *see also Texas Nrgize No. 1, Inc. v. Kahala Franchise Corp.*, 2015 WL 3707979, at *2 (D. Ariz. June 15, 2015) ("costs and the loss of ten months in resolving this dispute satisfy the prejudice requirement of waiver").

In addition to undue delay, prejudice "may consist of expense, duplication of effort in separate forums, or advantage to the other party." *Brooks v. Robert Larson Auto. Group*, 2009 WL 2853452, at

---

[7] Due to an ongoing dispute related to Plaintiff's deposition, for which additional briefing is expected, it is possible that minimal non-expert discovery still may be completed, though several months after the ordered deadline.

* 2 (W.D.Wash. 2009) (citing *Mitsui & Co. (USA) v. C & H Refinery, Inc.*, 492 F.Supp. 115, 118-20 (N.D.Cal. 1980)); *Ori v. American Family Mut. Ins. Co.*, 2005 WL 3079044, * 3 (D. Az. 2005). Because Plaintiff initiated arbitration after the close of non-expert discovery, but continued to litigate the matter here, Defendant has incurred expenses from defending the claims in two forums simultaneously.  (Doc. 47 at 28-29) This includes duplicate briefing related to the enforceability of the arbitration agreement between Plaintiff and Lazer Spot and filing briefs before this Court and the AAA on similar issues.  (*See id.* at 29)  For these reasons, the Court finds Defendant met its burden to show Lazer Spot would be prejudiced if Plaintiff were permitted to proceed with arbitration, particularly after litigating the action for ten months and completing non-expert discovery.

### 4.    Conclusion

Lazer Spot has established that Plaintiff had knowledge of the arbitration agreement, acted in a manner inconsistent with the right to arbitration, and that Defendant would be prejudiced if the arbitration proceedings were permitted to proceed. Thus, Lazer Spot has satisfied the test identified by the Ninth Circuit in *Fisher*, and the Court finds Plaintiff waived his right to arbitration.  Consequently, Plaintiff's motion to stay for arbitration (Doc. 35) is **DENIED**.[8]

## IV.    Stay of Arbitration Proceedings

Defendant requests that the Court stay the arbitration proceedings already initiated by Plaintiff with AAA upon a finding that Plaintiff waived his right to arbitration.  (Doc. 47)  Plaintiff contends the motion to stay "instantly fails because it fails to address the four-element showing necessary for obtaining injunctive relief:

> Before an award of permanent injunctive relief, a plaintiff must meet four well-established requirements: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

(Doc. 61 at 12, quoting *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184 (9th Cir. 2011)).

The Ninth Circuit determined the Court has the discretion to stay arbitration and refuse to stay

---

[8] Because Plaintiff waived his right to arbitration, the Court declines to consider the alternative grounds for denial of the motion raised by Defendant, related to a subsequent agreement to not arbitrate the claims.

1   its own proceedings. *Alascom Inc v. ITT North Electric Co.,* 727 F.2d 1419, 1420 (9th Cir. 1984); *see*

2   *also Morgan Stanley*, 134 F. Supp. 3d at 1234 (the court "has the authority to enjoin arbitration

3   proceedings where there is no valid, enforceable arbitration agreement between the parties," such as

4   where a party waived his rights to arbitration). In *Alascom,* the Ninth Circuit observed that stays of

5   arbitration proceedings are "analogous to injunctions" for purposes of appealability. *Id.,* 727 F.2d at

6   1421-22. Upon so finding, the Court determined an "order staying arbitration is … appealable," and

7   would be "overturned when there has been an abuse of discretion." *Id.* at 1422. Significantly,

8   however, *Alascom* committed the matter to the Court's discretion and indicated "to determine whether

9   the district court abused its discretion, it is necessary to decide whether there were any claims to be

10  arbitrated." *Id.*

11          As discussed above, the Court has concluded Plaintiff waived his right to arbitration, and as a

12  result, he is not entitled to proceed with arbitration on his claims. For this reason, the Court exercises

13  its discretion to stay the arbitration proceedings. *See Alascom*, 727 F.2d at 1424-25 (concluding "the

14  district court did not abuse its discretion in staying arbitration and refusing to stay its own

15  proceedings"). Defendant's motion to stay the arbitration proceedings currently before AAA (Doc. 47)

16  is **GRANTED**.

17  **V.       Requests for Sanctions**

18          Plaintiff asserts that "Defendant's Counsel's opposition to arbitration is a sanctionable attempt

19  to unreasonably and vexatiously multiply proceedings." (Doc. 35 at 35, emphasis omitted) Therefore,

20  Plaintiff seeks sanctions under Section 1927 of title 28 of the United States Code, which provides:

21              Any attorney or other person admitted to conduct cases in any court of the United
                States or any Territory thereof who so multiplies the proceedings in any case
22              unreasonably and vexatiously may be required by the court to satisfy personally the
                excess costs, expenses, and attorneys' fees reasonably incurred because of such
23              conduct.

24  (*Id.* at 36, quoting 28 U.S.C. § 1927) Plaintiff contends Section 1927 sanctions related to this motion

25  are appropriate because Plaintiff was "forced to litigate an expensive arbitration motion with complex

26  Conflicts-of-Laws issues" and counsel was "forced to defend himself against constant aspersions of

27  forum shopping, which aspersions were presented to this Court and to the arbitration forum." (*Id.* at

28  39) According to Plaintiff, "[s]uch costs and burdens would have been avoided through a stipulation

17

to stay the action, which would have only been reasonable under the circumstances." (*Id.*) Alternatively, Plaintiff asserts sanctions should be imposed under Cal. Civ. Code § 1281.97(b), asserting "Lazer Spot has materially breached the arbitration agreement by refusing to submit its waiver contention [to] the arbitrator."  (Doc. 35 at 45)

Significantly, as discussed above, Defendant has prevailed on its opposition to the motion to stay, establishing Plaintiff waived his right to arbitration.  Thus, Defendant's opposition to arbitration was not unreasonable or vexatious.  Moreover, the issue of waiver was properly before the Court. Consequently, the request for sanctions related to the opposition of Plaintiff's motion to stay for arbitration is **DENIED**.[9]

## VI.    Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1.    Defendant's ex parte application to strike Plaintiff's untimely reply brief (Doc. 68) is **GRANTED**;

2.    Plaintiff's motion to stay for arbitration (Doc. 35) is **DENIED**;

3.    Defendant's motion to stay the arbitration proceedings is **GRANTED**; and

4.    Defendant's ex parte application for further stay of the arbitration proceedings (Doc. 94) is terminated as moot.

IT IS SO ORDERED.

Dated:    **July 24, 2020**                        **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[9] In the "Notice of Motion," Plaintiff indicates sanctions are warranted on several other grounds, such as concealment of the arbitration agreement, "a pattern and practice of suppressing documents," and the fact that Defendant indicated Lazer Spot would seek sanctions against Plaintiff.  (Doc. 35 at 2-3)  However, the *only* ground brief related to the request for sanctions was Defendant's opposition to arbitration.  (*See id.* at 34-35)  Thus, all other grounds identified in the Notice of Motion are deemed abandoned.  Moreover, to the extent Plaintiff seeks to now raise discovery disputes related to the production of the arbitration agreement, this is not the proper mechanism.